**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

ROGER STEWARD, SAUNDRA STEWARD,
VERNA WELCH, SAVANNAH WELCH,
WANDA SULLIVAN and JOHN SULLIVAN;
Illinois residents,
on behalf of themselves individually and
all others similarly situated,

                Plaintiffs,

                v.

HONEYWELL INTERNATIONAL, INC.
a Delaware corporation,
                Defendant.

CIVIL ACTION

Case No.: 18-1124

**CLASS ACTION COMPLAINT**

**Jury Demanded**

## I.      INTRODUCTION

Plaintiffs Wanda Sullivan, John Sullivan, Roger Steward, Saundra Steward, Verna Welch, and Savannah Welch, on behalf of themselves individually and all others similarly situated, (collectively "Plaintiffs") through undersigned counsel, based on their personal knowledge, information and belief, as and for their Class Action Complaint for damages, equitable and injunctive relief against the Defendant Honeywell International, Inc. ("Honeywell") a Delaware corporation respectfully allege as follows:

## II.   NATURE OF THE ACTION

1.   On the outskirts of Metropolis, Illinois sits a plant that made uranium hexafluoride (UF6) from at least 1963 until at least 2017.

2.   The air inside the plant was monitored regularly and found to always contain low-levels of uranium.

3.   What the populace did not know was that continuously for decades the plant expelled air laden with radioactive material and other metals through a system of fans and ducts operating around the clock to vent air from within the plant to the atmosphere.

4.   For over a half century winds have carried the radioactive materials and other metals throughout the area in such concentrations that radioactive materials and metals can still be found deposited in soils and buildings in and around Metropolis.

5.   Plaintiffs seek remediation of the radioactive and metal contamination found on their property.

6.   Defendant Honeywell, the plant's owner and operator, could have prevented or avoided this contamination with better precautionary measures, compliance with applicable regulations, and the use of reasonable care.  The foreseeable risks of harm posed could have been reduced or avoided by reasonable instructions or warnings when it became clear that toxins had been released into the environment.   Those omissions render Honeywell's operations not reasonably safe.  Exposure to this radioactive and toxic mixture in the environment through human pathways can cause grave bodily injury and has created a need for a mitigation/abatement program to protect the public from further risk of being harmed by Honeywell's tortious contamination of their properties.

7.   In addition to damages, the Plaintiffs petition this Court for injunctive relief to protect Plaintiffs and Class Members from further dangers.

8.   Plaintiffs and Class Members are individuals who have suffered economic losses, property losses, and non-economic damages as the result of Honeywell's toxic releases. Plaintiffs and Class Members have all suffered in common an array of damages from Honeywell's emissions of radioactive material, specifically and as explained in more detail herein.

9.   Plaintiffs' claims do not fall within the scope of the Price Anderson Act.   The facilities owned by Defendant which caused the releases complained of herein have never received a license to dispose of any radioactive wastes which are in and around Plaintiffs' homes.   Upon information and belief, Plaintiffs have been unable to identify any indemnification agreement with the United States government under 42 U.S.C. § 2210 with respect to the complained activities.

10.   Plaintiffs expressly contend that the ongoing and continuous releases that resulted in the contamination and that form the basis of this suit are not a "nuclear incident" as that term is defined in the Price-Anderson Act. Plaintiffs' claims are freestanding state law claims concerning traditional state regulation and do not implicate the Price-Anderson Act and its textually manifest concerns related to liability limitation and indemnification.   At the time of the outrageous, reckless, negligent acts that form the basis for this lawsuit occurred, the Price Anderson Act did not apply because the wastes at issue were not subject to said Act. The Price-Anderson Act does not apply to ongoing and continuous release of the indisputably hazardous, toxic and carcinogenic wastes at issue in this Petition.

### III.   PARTIES

11. Putative Class Representatives and Plaintiffs Roger and Saundra Steward are married, above the age of majority and live within 0.4 miles of Honeywell's UF6 plant. They have lived for over eighteen years on their plot of an heirship property where they raised a family on their family property right next to her sisters and their families- co-Plaintiffs Verna Welch, Wanda Sullivan and John Sullivan. Those homes are believed to be the closest to the plant. Scientific testing shows their property to be contaminated with uranium and thorium.  They seek damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including topsoil replacement, along with such injunctive and declaratory relief as necessary to protect human health and the environment.

12. Putative Class Representative Savannah Welch is above the age of majority and have lived for over two decades years on property she owns in Metropolis, Illinois within 0.4 miles of Honeywell's UF6 plant. Savanah lived for over twenty years on her plot of an heirship property where she raised a family on her family property right next to her aunts and their families- co-Plaintiffs Roger Steward, Saundra Steward, Wanda Sullivan and John Sullivan. Those homes are believed to be the closest to the plant. Scientific testing shows Savannah Welch's property to be contaminated with uranium and thorium. She seeks damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including topsoil replacement, along with such injunctive and declaratory relief as necessary to protect human health and the environment.

4

13. Putative Class Representative Verna Welch is above the age of majority and have lived for over ten years on property she owns in Metropolis, Illinois within 1 miles of Honeywell's UF6 plant. Verna Welch is the mother of daughter Plaintiff and Putative Class Rep Savannah Welch and  lived for over twenty years on the plot of an heirship property now owned by her daughter. There she raised a family on her family property right next to her aunts and their families- co-Plaintiffs Roger Steward, Saundra Steward, Wanda Sullivan and John Sullivan. Those homes are believed to be the closest to the plant. Scientific testing shows that property to be contaminated with uranium and thorium. Verna now lives on land that has been exposed to the same type of contamination as plagues the property upon which her daughter still lives. Verna Welch seeks damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including topsoil replacement, along with such injunctive and declaratory relief as necessary to protect human health and the environment.

14.  Putative Class Representatives and Plaintiffs Wanda and John Sullivan are above the age of majority and live within .04 miles of Honeywell's UF6 plant. They seek damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitives and property damage including top-soil replacement along with such injunctive and declaratory relief as necessary to protect human health and the environment.

15.  Defendant Honeywell International, Inc. is a Delaware corporation with its principal place of business in New Jersey.  Honeywell is the owner, operator and licensee of the UF6 plant that is the subject of this lawsuit. The legal description of the property

upon which the UF6 plant sits is as follows: Section 3, Township 16 South, Range 4 East and Sections 33, 34 and 35 Township 15 South, Range 4 East.  Honeywell became the owner, operator and licensee via a 1999 merger consummated with a $14 billion stock swap in which Honeywell acquired Allied Signal, Inc., the previous owner of the Metropolis UF6 plant.

## V.   JURISDICTION

16.   Original jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1332(d)(2).  This Court is vested with jurisdiction by virtue of 28 U.S.C. §1332(d). Minimal diversity exists between named Plaintiffs of this putative class action, each of whom are citizens of the State of Illinois, and Defendant Honeywell, a citizen of Delaware, its state of incorporation, and New Jersey, its headquarters and principal place of business location. The proposed class exceeds 100 persons. Further, the amount in controversy exceeds $5,000,000.00.

17.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial portion of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## VI.   FACTUAL ALLEGATIONS

### A.  Operations at Honeywell's Metropolis UF6 Plant

18.   Honeywell, from at least 1963 until at least late 2017, operated the UF6 plant on the outskirts of Metropolis along the Ohio River.

19.   Fifty-Five gallon drums, bolted shut and filled with powdered uranium ore from all over the world, would come to the UF6 plant where they would be emptied with an

automated "drum dumper." Each time the drum dumper emptied a barrel, radioactive dust containing metals would be released into the air.

20.   After the drums were dumped they were cleaned. Earlier in the plant's history workers sandblasted the drums, which also released radioactive and metal-contaminated dust into the air. Later, a water cleaning method replaced sandblasting. Six-inch berms around a concrete cleaning pad contained the wastewater that then entered a series of drains leading to the UF6 plant's wastewater treatment facility where, after moving through a single settling pond, the water was discharged into the Ohio River. In 2006, Honeywell pled guilty in federal court to criminal violations of the Clean Water Act for discharging radioactive materials into the Ohio River.

21.   From the drum dumper the radioactive ore went into a dryer known as a "calciner" that would heat the radioactive material containing ore. Although intended to contain the dust within the calciner, vents from the device discharged into the atmosphere outside the UF$^6$ plant, presenting another pathway for radioactive materials.

22.   After the calciner, the radioactive material went to "ore processing" where it went through yet another drying process.

23.   Water was then injected into the dry, powdered radioactive material from which pellets were made. Workers referred to the pellets as "green salt".

24.   In the "fluoronator", fluorene gas was introduced to the radioactive green salt, thereby converting the radioactive green salt into a gas- UF6 - which was then pumped into canisters and shipped to customers.

25.   As many as 70 sampling devices (8 around the perimeter fence and 62 inside the plant) were arrayed throughout the UF6 plant's buildings and grounds from which tests for

radiation were conducted on a daily basis by plant personnel working in the on-site health physics lab.

26.   Upon information and belief, exceedances of regulatory levels established for acute worker exposure were detected on an occasional basis between 1974 and 2018,

27.   Upon information and belief, a vanishingly small number, if any, of the tens of thousands of samples taken between 1974 and 2018 failed to detect radioactive material in the ambient air.

28.   Sediment samples from rivers and ponds in proximity to the UF6 plant were also sampled and tested for the presence of radioactive material.

29.   Upon information and belief, none of the river and pond sediment samples failed to detect the presence of radioactive material from 1974 to 2018.

30.   Inside the UF6 plant, fans sucked the air laden with radioactive material in the plant up into a series of ducts leading to vents which expelled that air into the atmosphere 24 hours a day, 365 days a year decade after decade after decade.

31.   Over that reach of time, on occasion an alarm would sound warning the populace of a "release" from the plant. Rarely would such an alarm be accompanied by an acknowledgement or announcement by plant officials, but even on those rare occasions the message always took the same reassuring tone that any such release did not exceed regulatory limits and did not pose a risk of harm.

32.   Never have Honeywell officials or government officials disclosed the daily emissions of low-levels of ionizing radiation into the environment where the populace of Metropolis has lived and worked for years.

8

33.     During a public Licensee Performance Review in Metropolis on May 3, 2018, Nuclear Regulatory Commission (NRC) Region II Chief of Fuel Facility Inspection, Omar R. Lopez-Santiago, admitted to community members that the Honeywell UF6 plant has never had a license to handle plutonium.

34.     During that public Licensee Performance Review, former Honeywell employee and Metropolis resident Howard Cook informed the NRC representatives that Honeywell had in fact received and processed downgraded fissile material extracted from Russian nuclear warheads beginning at some point in 1993.

35.     Upon information and belief, Honeywell received Russian fissile material in the form of green salt delivered in fifteen-gallon drums with markings written in Russian.

36.     Union members obtained a sample of the Russian green salt, took it to the plant's lab and demanded to know what it contained.

37.     Upon information and belief, the Russian green salt contained Plutonium.

38.     Upon information and belief, there is no other source of Plutonium, Cesium and Americium other than the Honeywell UF6 plant.

39.     On information and belief, Plaintiffs allege that decades of continuous discharges of low-levels of ionizing radiation from Honeywell's UF6 plant into the surrounding area have created an imminent and substantial endangerment to public health.

40.     During the Licensee Performance Review, Defendant Honeywell's representative stated that the UF6 plant was in a ready idle state and that it was anticipated that the UF6 plant would go back into production when the price of uranium rose.

41.   During the Licensee Performance Review, no mention was made by Defendant Honeywell representatives or NRC personnel of any planned changes to the UF6 plant's design that would serve to limit emissions from the facility.

42.   Honeywell either knew or should have known of the obvious poor conditions and environmental practices at the site and knew or with the exercise of reasonable diligence should have known of the threat of chemical release. Given the known toxicity of the chemicals at the site, Honeywell either knew or should have known that its warnings were insufficient under the circumstances.

**B. Defendant's Radioactive Particles Contaminated the Plaintiffs' Property**

43.   The Plaintiffs' properties are contaminated by radioactive material. 89 Samples taken on and around the Plaintiffs' properties and at other locations throughout Metropolis confirm an elevated presence of radioactive particles.

44.   Environmental evidence gathered thus far by indicates that property and persons in Metropolis were exposed to toxic substances and negatively impacted by toxic releases from the site.

45.   Plaintiffs' environmental sampling and scientific testing of properties throughout the Metropolis area revealed the presence of radioactive and toxic materials consistent with those expected to be found in a facility converting uranium ore into hexafluoride gas. Tests revealed the presence of these radioactive and toxic materials in residences in Metropolis.

46.   Scientific analysis of samples has revealed the presence of "fingerprints" linking the materials either stored, processed and/or manufactured at the Honeywell plant to the contamination.

47.   The Steward/Welch/Saunders Property neighbors the Honeywell UF6 plant.  This proximity puts the Steward/Welch/Saunders Property in the direct path of radioactive air emissions, radioactive particles distributed by the wind blowing such contamination off the site in dirt and dust all of which emanate from the Honeywell facility.

48.   Another tested site sits over two miles to the Northeast of the Honeywell UF6 plant and the winds put site in the direct path of radioactive air emissions, radioactive particles distributed by the wind blowing such contamination off the site in dirt and dust all of which emanate from the Honeywell facility.

49.   The fact that the concentration of radioactive material declines the farther one gets from the plant and that by far the highest levels were found at the residences closest to the Honeywell plant further implicates Defendant Honeywell.

50.   The radioactive contamination that has polluted the Plaintiffs' Properties and continues to threaten to further pollute their match waste fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive wastes linked to the operations at the Honeywell UF6 plant.

51.   Radioactive contamination of the Plaintiffs' Properties renders the Plaintiffs' Properties unfit for normal use and enjoyment and destroys its fair market value.

52.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class are currently being subjected to radioactive waste contamination and will suffer irreparable harm if an injunction is not granted requiring Defendant to conduct a total and complete cleanup of the contamination and to prevent and eliminate further contamination.

**C. Radioactive Wastes**

53. Ounce for ounce, radioactive isotopes are considered among the most toxic materials known to man.

54. Radiation is a type of energy transmitted over a distance. Some materials spontaneously emit radiation through a process known as radioactive decay. As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials.

55. Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other material. When radiation energy interacts with other material, it causes a process called ionization which can damage chemical structures. When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other harms.

56. People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body. Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin. The material taken in will internally expose the organs and tissues for as long as it remains inside the body.

57. One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low,

the biological effects can still be gravely serious.  The second characteristic is that there are latent biological effects of radiation.

58.  The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries.  Somatic injuries are damages to the individual exposed.  This can be damages to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system, as well as cancers.  Illnesses such as cancers may take a number of years to appear.

59.  Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells.  As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase.  These genetic mutations can be passed down to a person's offspring even generations later.  These injuries include birth abnormalities and cancer.

60.  One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment.  As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material.  The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate.  For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

**D.  Concealment of Facts Related to Risk**

61.  Honeywell, through its silence as well as its aggressive public relations campaign, has reassured the public and Plaintiffs that their Metropolis plant has not contaminated nearby properties.  In particular, Defendant Honeywell made misrepresentations that were meant to assure Plaintiffs that Honeywell UF6 plant presents absolutely no danger to public health.

## VII.    CLASS ACTION ALLEGATIONS

62.  Plaintiffs seek to represent the following class of individuals: *All property owners within the town of Metropolis and property owners within 3 miles of the Defendant Honeywell's UF6 plant along Doug Sumner Lane, Airport Road, Country Club Lane and Mt. Mission Road or road intersecting those roads.*

63.  Excluded from the Class are the Defendant and its officers, directors, and employees, as well as the Court and its personnel working directly on the case with the exception of court reporters.

64.  Plaintiffs and all others similarly situated are entitled to have this case maintained as a class action pursuant to Federal Rules of Civil Procedure for the following reasons:

(1)  The prerequisites for a class action under Federal Rule of Civil Procedure 23(a) are met.  The class is so numerous that joinder of all persons is impracticable. As many as seven thousand (7,000) people are adversely affected by Defendant's release of radioactive materials. The number of Class Members can be readily determined from the United States Census Bureau.

(2)  There are common issues of law and fact, including: (a) whether Honeywell is liable for damages to the class for negligently allowing the release of radioactive materials into the surrounding inhabited area and/or its failure to

14

warn of those materials' toxicity; (b) the scope of damages caused by Honeywell's conduct; (c) whether Honeywell is strictly liable for conducting an ultra-hazardous activity injurious to members of the class; (d) whether Honeywell is liable for nuisance and trespass; (e) whether Honeywell may be compelled under statute or court order to take steps to protect human health and the environment, including but not limited to medical monitoring, topsoil replacement, a compliance audit and improved environmental safety measures; and (f) whether Honeywell is liable to the Class for punitive damages. These and other common issues of law and fact relate to and affect the rights of Plaintiffs and Class Members.

65. Plaintiffs' claims are typical of the class. Plaintiffs reside and/or were present within the affected area.

66. Plaintiffs have suffered annoyance, aggravation, as well as economic loss and injury to their real and personal property and/or have been subjected to health risks, that are typical of the experience of the Class Members. Plaintiffs' interests are identical to and aligned with those of other Class Members. Plaintiffs and the Class Members have suffered an array of damages all stemming from the common trunk of facts and issues related to Honeywell's emissions. Those damages are as follows:

(1) Non-Physical Tort Claims are pursued by Class Members for emotional distress, annoyance, loss of enjoyment, nuisance, and inconvenience;

(2) Property Related Claims are pursued by Class Members for trespass, property damage, and loss of use of property; and

(3)  Plaintiffs will fairly and adequately represent and protect the interests of the class because:

67.   Plaintiffs have retained counsel experienced in the prosecution of class action litigation who will adequately represent the interests of the class;

(1)  Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and absent Class Members or otherwise that cannot be managed through the implementation of available procedures;

(2)  Plaintiffs, through their counsel have adequate financial resources to assure that the interests of the class will be protected; and

(3)  Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

68.   A class action may be maintained under Federal Rule of Civil Procedure 23(b)(2) because the party opposing the class, Honeywell, has acted and/or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole. Plaintiffs and the Class seek an injunction requiring:

- Redesign of the Honeywell UF6 plant to limit emissions of radioactive materials;
- Amendments to Honeywell's community warning plans; and
- A third-party compliance audit of Honeywell's entire waste management operation and environmental health and safety program.
- Top-soil replacement and interior structure mitigation to remediate continuing threats to human health and the environment.

If this injunctive relief is not granted, great harm and irreparable injury to Plaintiffs and members of the Class will continue, and Plaintiffs and members of the Class have no

adequate remedy at law for the injuries which are threatened to occur. Absent action from this Court, Honeywell will continue to damage Plaintiffs and members of the Class and threaten future injury. Defendant's actions and inactions are generally applicable to the Class as a whole, and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole.

69.   A class action may also be maintained under Federal Rule of Civil Procedure 23(b)(3) because common issues of law and fact predominate over those issues that might pertain to individual cases, and a class action is superior to other available procedures for the fair and efficient adjudication of this controversy.  The interests of all members of the class in establishing the liability of Defendant Honeywell, and relative fault, for the release of radioactive materials are cohesive.  The certification of a Class seeking damages is an appropriate means by which injured Plaintiffs and Class Members may assert claims to recover economic losses and property damage, as well as assert claims for annoyance, aggravation and inconvenience.

70.   A class action may be maintained under Federal Rule of Civil Procedure 23(b)(2) because Honeywell has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate the entry of equitable or injunctive relief to prevent recurrence of the conduct in the future.

71.   Further, any denial of liability and defenses raised by the Defendant would be applicable to all claims presented by all members of the class or can otherwise be managed through available procedures.

72.   Honeywell's conduct presents predominant common factual questions. Fundamentally, all of the Plaintiffs' claims arise out of Honeywell's single course of

conduct causing the release of radioactive materials from the Honeywell plant. Although Honeywell's releases affected a sizeable geographic area and many individuals and businesses, they can be traced back to actions taken, or not taken, by Honeywell. Whether Plaintiffs and the Class Members are presenting one or more of the relevant categories of Non-Physical Tort Claims and Property Claims, they will present common liability proof that is the same for each member of the Class. Across claim categories, Plaintiffs' common proof of Honeywell's liability will involve the same cast of characters, events, discovery, documents, fact witnesses, and experts.

73. The need for proof of Plaintiffs' and Class Members' damages will not cause individual issues to predominate over common questions. The amounts of economic and non-economic losses, consistent with each of the categories of claims, can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

74. A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while

18

a single class action can determine, with judicial economy, the rights of each member of the class or subclasses, should that be determined to be appropriate.

75.   The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

76.   Certification of the Class with respect to particular common factual and legal issues concerning liability and comparative fault, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Federal Rule of Civil Procedure 23(c)(4).

77.   The particular common issues of liability, comparative fault, and the quantum of punitive damages or ratio of punitive damages to actual harm are common to all Class Members no matter what type of harm or injury was suffered by each Class Member.

## VIII.   CAUSES OF ACTION

### A.   Count One - Negligence

78.   Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

79.   Honeywell's conduct, acts and omissions violated duties owed to Plaintiffs and the Class.  Honeywell's negligence proximately caused damage to Plaintiffs and the Class.

### B.   Count Two - Trespass

80.   Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

81.   Honeywell's conduct as set forth herein constitutes trespass, which resulted in damages to Plaintiffs and the Class.

### C.     Count Three - Nuisance

82.  Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

83.  Honeywell's conduct as set forth herein constitutes the tort of nuisance which resulted in damages to Plaintiffs and the Class.

### D.     Count Four - Property Damage

84.  Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

85.  Honeywell's conduct as set forth herein constitutes the tort of property damage which resulted in damages to Plaintiffs and the Class.

### E.     Count Five - Failure to Warn

86.  Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

87.  Honeywell's conduct as set forth herein constitutes the tort of failure to warn which resulted in damages to Plaintiffs and the Class.

### F.     Count Six - Ultra-Hazardous Activity

88.  Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

89.  Honeywell's conduct as set forth herein constitutes the tort of ultra-hazardous liability, which resulted in damages to Plaintiffs and the Class.

### G.     Count Seven - Gross Negligence

90.  Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

91.   Honeywell's conduct as set forth herein was reckless and wanton, constituting the tort of gross negligence, which resulted in damages to Plaintiffs and the Class.

### H.      Count Eight -  Negligent Infliction of Emotional Distress

92.   Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

93.   Honeywell's conduct as set forth herein was reckless and wanton, constituting the tort of negligent infliction of emotional distress, which resulted in damages to Plaintiffs and the Class.

### I.      Count Nine - Punitive Damages

94.   Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

95.   Honeywell's conduct as set forth herein was malicious, oppressive, willful, wanton, reckless, and/or criminally indifferent to civil obligations affecting the rights of others, including Plaintiffs and the Class.  Plaintiffs and the Class are thus entitled to recover punitive damages against Honeywell.

96.   Honeywell was malicious, oppressive, willful, wanton, reckless, and/or criminally indifferent to civil obligations affecting the rights of others, including Plaintiffs and the Class, in its activities and in failing to warn Plaintiffs of dangers well known to Honeywell, which acts exhibited a deliberate disregard for the rights and safety of Plaintiffs and the Class.

97.   Honeywell realized the imminence of danger to Plaintiffs and other members of the public, but continued its ultra-hazardous activities with deliberate disregard and complete indifference and lack of concern for the probable consequences of its acts.

98. As a direct result of Honeywell's deliberate disregard for the rights and safety of others, gross negligence, malicious, oppressive, willful, wanton, reckless, and/or criminally indifferent to civil obligations affecting the rights of others, including Plaintiffs and the Class, Plaintiffs and the Class suffered the injuries and dangers stated above.

99. Honeywell's acts as described herein exhibited deliberate disregard for the rights and safety of others and were malicious, oppressive, willful, wanton, reckless, and/or criminally indifferent to civil obligations affecting the rights of others, including Plaintiffs and the Class. An award of punitive and exemplary damages is therefore necessary to punish Honeywell and to deter any recurrence of this intolerable conduct. Consequently, Plaintiffs and the Class are entitled to an award of punitive damages.

100. Honeywell's conduct as set forth herein was malicious, oppressive, willful, wanton, reckless, and/or criminally indifferent to civil obligations affecting the rights of others, including Plaintiffs and the Class. Plaintiffs and the Class are thus entitled to recover punitive damages in an amount sufficient to punish Honeywell for its wrongful conduct and to deter it and others from similar wrongful conduct in the future.

## IX. PRAYER FOR RELIEF

101. **WHEREFORE**, Plaintiffs respectfully pray for a Jury Trial and for the following relief:

(1) An Order certifying this action to proceed as a Class Action, authorizing Plaintiffs to represent the interests of the Class (or subclasses, as appropriate) and appointing undersigned counsel to represent the Class;

(2) An award of damages for Class Members who suffered business or economic losses as a result of Honeywell's acts or omissions;

(3)  An award of damages or mechanism for recovery for Class Members who incurred any out-of-pocket expenses as a result of Honeywell's acts or omissions along with an award of damages to pay for any necessary mitigation or remediation of class members' property;

(4)  An award of damages or mechanism for recovery to compensate for loss of use and enjoyment of property, annoyance, nuisance, aggravation, and inconvenience as a result of Honeywell's acts or omissions;

(5)  An award of punitive damages for all Class Members who were exposed to Honeywell's radioactive materials;

(6)  Prejudgment and post-judgment interest;

(7)  An Order requiring a re-design of the UF6 plant to eliminate the emissions of radioactive materials from the UF6 plant;

(8)  An Order establishing such administrative procedures as are reasonable to effectuate the relief granted to Plaintiffs and the Class Members;

(9)  That the Court order Honeywell to pay for the costs of this proceeding, including reasonable attorneys' fees and costs, including, but not limited to, costs of class notice and administration; and

(10) Such other relief as the Court or Jury may deem appropriate.

Respectfully Submitted,

/s/ James F. Clayborne, Jr.
James F. Clayborne, Jr.
**Clayborne, Sabo and Wagner LLP**
525 W. Main Street, Suite 105
Belleville, Illinois 62220
Telephone: (618) 239-0187
Facsimile: (618) 416-7556
jclayborne@cswlawllp.com

Richard Kruger.
Paul Henry
**Kruger, Henry and Hunter,LLC**
110 W. Fifth Street
Metropolis, Illinois 62960
Telephone: (618) 524-9302
Facsimile: (618) 524-9305
khh@khhlaw.com
phenry@khhlaw.com

Katrina Carroll
Kyle A. Shamberg
**Lite DePalma Greenberg LLC**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com


Kevin W. Thompson
*Attorney seeking pro hac vice admission*
David R. Barney, Jr.
*Attorney seeking pro hac vice admission*
**Thompson Barney**
2030 Kanawha Boulevard, East
Charleston, West Virginia  25311
Telephone: (304) 343-4401
Facsimile: (304) 343-4405
kwthompsonwv@gmail.com
drbarneywv@gmail.com

Celeste Brustowicz
*Attorney seeking pro hac vice admission*
Barry J. Cooper, Jr.
*Attorney seeking pro hac vice admission*
Stephen H. Wussow
*Attorney seeking pro hac vice admission*
Victor Cobb
*Attorney seeking pro hac vice admission*
**Cooper Law Firm, LLC**
1525 Religious Street
New Orleans, LA  70130
Telephone: 504-399-0009

cbrustowicz@sch-llc.com
swussow@sch-llc.com


Ron A. Austin
*Attorney seeking pro hac vice admission*
**Ron Austin & Associates, LLC**
920 Fourth Street
Gretna, LA  70053
Telephone: (504) 227-8100
Facsimile:  (504) 227-8122
raustin@ronaustinlaw.com


ATTORNEYS FOR PLAINTIFFS