**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROGER STEWARD, et al.,** *on behalf of themselves and all others similarly situated,* | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 18-CV-1124-SMY** |
| **HONEYWELL INTERNATIONAL, INC.,** | ) | |
| **Defendant.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In this putative class action, Plaintiffs allege that from 1963 to 2017, a plant making uranium hexafluoride ("UF6") operated on the outskirts of Metropolis, Illinois and emitted air contaminated with radioactive and other toxic materials. They further allege that throughout the years, this material settled into the soil and buildings around Metropolis, causing property loss and damages. Plaintiffs seek compensation for property damage, personal injuries, and remediation from Defendant Honeywell International, Inc. ("Honeywell"), which now owns the plant.

In the Amended Complaint (Doc. 89), Plaintiffs assert state law claims of negligence, trespass, nuisance, property damage, failure to warn, ultra-hazardous activity, gross negligence and negligent infliction of emotional distress (Counts I – VIII) as well as federal claims pursuant to the Resource Conservation and Recovery Act ("RCRA), 42 U.S.C. § 6901, *et seq.* (Count IX), the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* (Count X), and the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.* (Count XI).

Now pending before the Court are Honeywell's Second Motion to Dismiss for Failure to

State a Claim (Doc. 95), Motion for Order to Stipulate Regarding Claims Related to Personal Injury and Emotional Distress (Doc. 119), and Motion for Oral Argument or Referral to Magistrate Judge (Doc. 139). For the following reasons, the Motion to Dismiss is **GRANTED in part**, the Motion for Order to Stipulate is **DENIED**, and the Motion for Oral Argument or Referral to Magistrate Judge is **DENIED**.

## Discussion

### Motions for Entry of Stipulated Order (Doc. 119) and for Oral Argument/Referral to Magistrate Judge (Doc. 139)

Defendant seeks entry of a "stipulated order" regarding a "Joint Stipulation to Limit Claims Related to Personal Injury and Emotional Distress." It is unclear why such an order is required, and Defendant has not provided the stipulation for the Court's review. Accordingly, this Motion is **DENIED**. Because the Court is able to resolve Defendant's Motion to Dismiss on the written submissions, oral argument and/or referral to the Magistrate Judge are unnecessary. Accordingly, Defendant's Motion (Doc. 139) is also **DENIED.**

### Motion to Dismiss (Doc. 95)

The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the Complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

1949 (citing *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

***Price Anderson Act Preemption (Counts I – VIII)***

Plaintiffs allege that Defendant does not have a license to dispose of plutonium[1] and is not a party to any indemnification agreement under the PAA (Doc. 89, ⁋⁋ 9, 35). They cite *Strong v. Republic Services, Inc.*, 283 F.Supp.3d 759 (E.D. Mo. 2017) and *Banks v. Cotter Corp.*, 2019 WL 1426259 (E.D. Mo. 2019), for the proposition that the PAA does not apply if there is no license. In *Strong*, the court held that "there cannot be federal jurisdiction under the PAA without a license or an indemnity agreement." *Id*. 283 F.Supp.3d at 766, 773. In *Banks,* the court found that there was an insufficient showing that the license issued by the Nuclear Regulatory Commission ("NRC") to the defendant covered the activity complained of by plaintiff. *Id*. 2019 WL 1426259 at * 9. But those cases speak to federal court jurisdiction and there is no dispute as to this Court's jurisdiction; the question is whether Plaintiff's state law claims are preempted by the Price-Anderson Nuclear Liability Act of 1957 ("PAA"). 42 U.S.C. § 2210 (and various other sections).

The PAA was enacted in furtherance of the Atomic Energy Act of 1954, 42 U.S.C. § 2011, *et seq*., to encourage private investment in nuclear energy by ensuring that public funds are available to compensate affected parties in the event of a nuclear incident and to limit liability for such nuclear incidents. 42 U.S.C. § 2012; *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 64-65 (1978). At the time of its enactment, the Atomic Energy Act provided for the licensing of privately constructed and operated nuclear power plants that would

[1] As noted above, Plaintiffs allege that the plant was used to make UF6 from uranium ore. Plaintiffs also contend that the plant was used to process "downgraded fissile material extracted from Russian nuclear warheads" (Doc. 89, ⁋ 37).

be supervised by the Atomic Energy Commission (now the NRC). *Id*. at 63. The PAA subsequently required such licensed facilities to purchase private liability insurance in exchange for indemnification by the federal government for damages in excess of the amount covered by private insurance. *Id*. 64-5; 42 U.S.C. § 2210(a - c). Through various amendments, the funds used to compensate victims were broadened to include indemnification from a fund subsidized by nuclear reactor owners. *Id*.

In the Price-Anderson Amendments Act of 1988 ("Amendments Act"), Congress gave federal courts original jurisdiction over "any public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). "The Amendments Act creates a federal cause of action which did not exist prior to the Act, establishes federal jurisdiction for that cause of action, and channels all legal liability to the federal courts through that cause of action." *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 856-857 (3rd Cir. 1991). Consequently, if Plaintiffs' state law claims constitute a "public liability action arising out of or resulting from a nuclear incident," such claims must be brought pursuant to the PAA.[2] "[A] state cause of action is not merely transferred to federal court; instead a new federal cause of action supplants the prior state cause of action" because the Amendments Act created an "overlay of federal law upon the rights and remedies previously available under state law." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100, 1101 (7th Cir. 1994).

Plaintiffs first maintain that the contamination of their property with radioactive material is not governed by the PAA because it is not a nuclear incident (which they define as a discrete and catastrophic event, like a nuclear plant meltdown and resulting fallout, originating in a licensed facility). Defendant urges a more expansive reading, arguing that the PAA applies to any claim

[2] For ease of reference, PAA refers to the Price Anderson Act as amended. Subject matter jurisdiction in this case is premised on diversity of citizenship and not the PAA (Doc. 89, ⁋ 17).

for property damage resulting from exposure to nuclear radiation, regardless of the licensing status of the facility from which the nuclear material was released. The PAA defines a "public liability action" as "any suit asserting . . ." "any legal liability arising out of or resulting from a nuclear incident . . . ." (with various exceptions not relevant here). 42 U.S.C. § 2014(hh) and (w). Relatedly, a "nuclear incident" is defined as "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ." 42 U.S.C. § 2014(q).[3] There is no dispute that the material in question in this case is "source, special nuclear, or byproduct material."

Further, by its plain language, the statute's definition of nuclear incident includes "any occurrence" causing property loss resulting from radioactive material. The ordinary and common meaning of occurrence – "a thing that occurs, happens, or takes place" – (www.oed.com, last visited May 8, 2020), encompasses both discrete events and those that take place over time. Thus, the PAA's expansion of the definition of nuclear incidents from "extraordinary nuclear occurrence" to "any occurrence" broadened the Act's reach to include more than catastrophic and singular events. *See Acuna v. Brown &Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("'Nuclear incident' is not limited to a single, catastrophic accident: indeed, one purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only."); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974

[3] The statute also provides, "it shall be unlawful . . . for any person . . . to transfer or receive in interstate commerce, manufacture, produce, transfer, acquire, possess, use, import, or expert any utilization or production facility except under and in accordance with a license issued by the commission pursuant to section 2133 or 2134 . . . ." 42 U.S.C. § 2131.

(8th Cir. 2018); *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 853-854 (3rd Cir. 1991).

Nevertheless, relying on *Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088, 1096 (10th Cir. 2015), Plaintiffs contend that the PAA governs larger nuclear incidents, whereas state tort law can govern lesser nuclear occurrences. In *Cook*, various property owners filed suit under the PAA and state nuisance laws to recover compensation for diminished property values due to mishandled radioactive waste that had leached into bodies of water and soil for numerous years. At trial, the plaintiffs prevailed on both their PAA claims and state law nuisance claims. On appeal, the Tenth Circuit Court of Appeals found that the district court erred in defining "nuclear incident" in the jury instructions. *Cook v. Rockwell Intern. Corp.*, 618 F.3d 1127, 1138-42 (10th Cir. 2010). On remand, the plaintiffs again prevailed by dropping their claim under the PAA and proceeding solely on the state law nuisance claim. In a second appeal, the defendant argued that the PAA prevented and precluded any state law action – that plaintiffs could only recover if they proved that the events constituted a nuclear incident. *Cook*, 790 F.3d at 1092. The Tenth Circuit, finding that there was no field preemption and that plaintiffs could proceed on their state law claims, concluded, "the Price-Anderson Act does not preempt and preclude a freestanding state law nuisance claim when a nuclear incident is alleged but unproven." *Id*. at 1103.

The Tenth Circuit's opinion in *Cook* is an outlier however. *See Acuna*, 200 F.3d at 337-8 (plaintiff alleging personal and property damage due to uranium mining); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d at 974 (concerning wrongful death claims due to exposure to nuclear radiation during World War II and the Cold War); *Estate of Ware v. Hospital of the University of Pennsylvania*, 871 F.3d 273 (3rd Cir. 2017) (considering cesium-137 exposure during the course of work in a laboratory); *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986 (9th Cir. 2008) (where thousands of plaintiffs filed suit pursuant to the PAA for decades long exposure to

radioiodine, a nuclear byproduct); *Rainer v. Union Carbide Corp.*, 402 F.3d 608 (6th Cir. 2005) (considering the years long exposure to radioactive substances by employees of a uranium enrichment plant); *Lawson v. General Electric Company*, 323 F.Supp.3d 980 (N.D. Ill. 2018) (where the district court adopted a prior district court's finding that plaintiff's exposure to radiation during his employment as a welder for 7 years in various nuclear power plants constituted a "nuclear incident."); *Carey v. Kerr-McGee Chemical Corp.*, 60 F.Supp.2d 800 (N.D. Ill. 1999) (where the district court found that plaintiffs' claims for personal and property damage due to thorium tailings produced at a chemical plant was governed by the PAA); *Sawyer v. Commonwealth Edison Co.*, 847 F.Supp. 96 (N.D. Ill. 1994) (where the district court found that "[t]he Price-Anderson Amendments Act does not contain any limiting language which would suggest that the 'nuclear incident' which causes the alleged personal injury must be an isolated nuclear occurrence"). Additionally, the Supreme Court noted that the PAA was enacted to avoid duplicative determinations and inefficiencies that ensue when claims within the act are adjudicated in jurisdictions other than a district court. *El Paso National Gas Co. v. Neztsosie*, 526 U.S. 473, 486-487 (1999). Plaintiffs' reading of "nuclear incident" would thwart that purpose. This Court declines the invitation; Plaintiff's state law claims are preempted by the PAA. Accordingly, Counts I - VIII are dismissed with prejudice.

***Resource Conservation and Recovery Act (Count IX)***

Plaintiffs allege that Defendant violated the "standards and permits under RCRA and that its use, storage and disposal of radionuclides presents an imminent and substantial endangerment to health and the environment" (Doc. 89 ⁋ 96). They also allege that the "radionuclides, including radioactive decay products, heavy metals, and fluorinated compounds" released from the plant are both "solid waste" and "mixed waste" as defined by the RCRA (*Id.* ⁋ 100-101). Defendant argues

that radioactive materials are outside the scope of the RCRA, that the claims about non-radioactive material are vague, that the RCRA does not apply to air emissions, and that Plaintiffs failed to state a citizen-suit under the RCRA.

As an initial matter, although Plaintiff may not identify the exact chemicals they allege caused damage or quantify the specific damage attributable to each hazardous material, that is not fatal to their claims at this stage of the proceedings. *F.R.C.P.* 8 only requires notice pleading, and Plaintiff's allegations are adequate to put Defendant on notice of the claim asserted against it.

The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996). While the Environmental Protection Agency has the primary responsibility for enforcing RCRA provisions, anyone may file suit against "any person . . . who is alleged to be in violation of any permit, standard, regulation . . . which has become effective pursuant" to the statute. 42 U.S.C. § 6972(a)(1)(A); *Liebhart v. SPX Corporation*, 917 F.3d 952, 958 (7th Cir. 2019). Such citizen suits may seek mandatory injunctions, requiring a responsible party to prevent further violation of the Act and to cleanup or remediate toxic waste. *Id*.

The RCRA applies to solid waste, including "hazardous waste" that because of its "quantity, concentration, or physical, chemical, or infectious characteristics" may cause increased mortality or illness or poses "a substantial present or potential hazard to human health or the environment." 42 U.S.C. § 6903(5). Excluded however is "source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended." *Id*. Plaintiffs allege that the material emitted from the plant includes both nuclear material ("nucleotides"), as defined by the Atomic Energy Act, and heavy metals (i.e. mercury, cadmium, arsenic, etc.) and "fluorinated compounds" (chemical compounds containing fluorine). While the emission of nuclear material

would not be covered by the RCRA, other material, within the definition of solid waste, are covered by the RCRA. Thus, the inclusion of material outside the coverage of the Act is superfluous but not fatal to Plaintiff's claim.

Defendant further argues that the RCRA does not apply to the "diffuse air emissions" alleged in the Amended Complaint. The Amended Complaint alleges that "expelled air laden with radioactive material and other metals" was "discharged through Honeywell's incinerator stacks, exhaust fans, dirt moving activities and intentional unpermitted burial at the site" and settled on land around the plant. (Doc. 89, ⁋⁋ 3-100). Plaintiffs argue that "physical, solid waste" converted to "airborne particulate matter" and subsequently settled on land around the plant and thus are the type of "discarded material" contemplated by the definition of solid waste (Doc. 102, p. 26). They urge the Court to adopt the Ninth Circuit's holding in *Ctr. For Comty. Action & Environ. Justice v. BNSF Ry. Co.*, 764 F.3d 1019 (9th Cir. 2014), that "particulate matter contained in exhaust gases" were solid waste under the RCRA. (Doc. 102, p. 27). But the Ninth Circuit made no such finding:

> Because we conclude that Defendants do not "dispose" of solid waste in violation of RCRA, we need not reach the parties' arguments about whether diesel particulate matter is indeed "solid waste" under 42 U.S.C. § 6903(27). Likewise, we do not reach the question whether diesel particulate matter, if it is a solid waste, "present[s] an imminent and substantial endangerment to health or the environment." § 6972(a)(1)(B).

*Id*. 764 F.3d 1019 n.19. And, this Court does not find Plaintiffs' argument that the air emissions from the plant are the type of solid waste governed by RCRA persuasive. Given this conclusion, it is unnecessary to address Defendant's final arguments that Plaintiffs failed to identify the specific regulations it violated or that it may only seek prospective injunctive relief. Accordingly, **Count IX is DISMISSED with prejudice.**

***Comprehensive Environmental Response Compensation and Liability Act (Count X)***

In Count X, Plaintiffs allege that Defendant's plant released radionuclides, a hazardous substance, into the environment and is liable "for response costs incurred, damages to natural resources (including assessment costs), and the costs of necessary health assessment and /or health effect studies" that are consistent with the "national contingency plan" as directed by CERCLA (Doc. 89, ⁋⁋ 111, 115). Defendant essentially argues that Plaintiffs have not alleged sufficient facts to state a claim and that categories of damages are unavailable under CERCLA.

CERCLA was enacted to "promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (quotation marks and citations omitted). Under the Act, any facility owner shall be liable for the "necessary costs of response incurred by any other person consistent with the national contingency plan" ("NCP") with respect to hazardous substances. 42 U.S.C. § 9607(a). "In order to succeed in an action for recovery of response costs under CERCLA, a plaintiff must prove the following elements: (1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a 'responsible person' for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs." *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 463 (7th Cir. 2012) (quotation marks and citations omitted).

Plaintiffs' allegations are sufficient to state a claim under CERCLA, even though they may not have identified the exact relevant part of the NCP. *See City of Colton v. Am. Promotional Events, Inc. -W.*, 614 F.3d 998, 1003 (9th Cir. 2010). As to damages, Plaintiffs may only pursue the "costs of investigating and remedying the effects of a release or threatened release of a hazardous substance into the environment." *Young v. United States*, 394 F.3d 858, 863 (10th Cir.

2005). However, it is unnecessary to strike particular damages requests at the pleading stage. Accordingly Count X will not be dismissed.

***Clean Air Act (Count XI)***

Plaintiffs allege that Defendant is in violation of the "National Emission Standards for Hazardous Air Pollutants" under the CAA by emitting radionuclides that expose people to radiation and "mixed-waste radioactive contamination." Plaintiffs specifically refer to the regulations contained in 40 CFR §§ 61.102 which state that "[e]missions of radionuclides, including iodine, to the ambient air from a facility regulated under this subpart shall not exceed those amounts that would cause any member of the public to receive in any year an effective dose equivalent to 10 mrem/yr" *Id*. §61.102(a). But that standard only applies to "facilities owned or operated by any Federal agency other than the Department of Energy and not licensed by the Nuclear Regulatory Commission . . . ." 40 C.F.R. §61.100. Defendant is not a federal agency subject to the regulation but rather a private corporation.

Plaintiffs also allege that Defendant continues to violate 42 U.S.C. § 7412, and that they may pursue a claim under the CAA's citizen suit section which permits any person to file a civil action against "any person . . . who is alleged to have violated or to be in violation of (A) an emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1). The 1990 amendments to the CAA added Title V, which allow for permits that include "enforceable emission limitations and standards, a schedule of compliance, requirements that the permittee submit to the permitting authority . . . the results of any required monitoring, and such other conditions as are necessary to assure compliance with applicable requirements of this chapter, including the requirements of the applicable implementation plan." 42 U.S.C. § 7661c(a). If a facility complies with a Title V permit, it is deemed to be in compliance with the CAA, including hazardous air pollutant standards.

*Id*. § 7661c(f).

Defendant attached its 104-page Title V permit to its Motion and argues that the existence of the permit requires dismissal of the CAA claim. But Plaintiffs argue that the emissions from the plant are "unpermitted and unlawful," i.e. outside the standards set forth in the Title V permit. In either case, at this juncture, the Court is unable to conclude that Defendant is in compliance with the permit such that Plaintiffs' CAA claim would fail as a matter of law. Accordingly, to the extent Plaintiffs allege violations of 40 CFR §61.102, their claim must be **DISMISSED**. The remainder of Count XI survives.

**Conclusion**

For the foregoing reasons, the Defendant's Second Motion to Dismiss for Failure to State a Claim (Doc. 95) is **GRANTED in part and DENIED in part**, the Motion for Order to Stipulate Regarding Claims Related to Personal Injury and Emotional Distress (Doc. 119) is **DENIED**, and the Motion for Oral Argument or Referral to Magistrate Judge (Doc. 139) is **DENIED**. Counts I-VIII are **DISMISSED with prejudice**; Count IX is **DISMISSED with prejudice**; and Count XI is **DISMISSED in part with prejudice.**

**IT IS SO ORDERED.**

**DATED: June 29, 2020**

**STACI M. YANDLE**
**United States District Judge**