# Exhibit 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | |
|---|---|
| ROGER STEWARD, CLYDE SCHMIDT, JOAN SCHMIDT, TIM BECK, CHARLA BECK, RANDY LANGFORD, BRENDA LANGFORD, TODD FAULKNER, KIM FAULKNER, Illinois residents, on behalf of themselves individually and all others similarly situated, | CIVIL ACTION<br><br>Case No.: 3:18-cv-01124<br><br>Honorable Staci M. Yandle |
| Plaintiffs, | |
| v. | |
| HONEYWELL INTERNATIONAL, INC. a Delaware corporation, individually and as successor-in-interest to Allied-Signal, Inc. | |
| Defendant. | |

**PLAINTIFFS ROGER STEWARD, CLYDE SCHMIDT, JOAN SCHMIDT, TIM BECK, CHARLA BECK, RANDY LANGFORD, BRENDA LANGFORD, TODD FAULKNER AND KIM FAULKNER'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

I.    Factual Background ................................................................................................................ 1

II.   Argument ............................................................................................................................... 5

  a.   Legal Standard ................................................................................................................ 5

  b.   Both Classes satisfy Rule 23(a) ..................................................................................... 6

    i.    Numerosity ................................................................................................................ 6

    ii.   Commonality.............................................................................................................. 6

    iii.  Typicality ................................................................................................................... 8

    iv.   Adequacy of Representation ..................................................................................... 9

  c.   The Classes are Certifiable Under Fed. R. Civ. P. 23(b)(3) ........................................ 10

    i.    Courts Considering Toxic Emissions Cases Find Predominance ........................... 10

    ii.   Common Questions Predominate for Plaintiffs' Negligence Claim ........................ 11

    iii.  Common Questions Predominate in Plaintiffs' Trespass and Nuisance Claims ........... 13

    iv.   Common Questions Predominate in Plaintiffs' CERCLA Claims ........................... 14

    v.    Common Questions Predominate in Plaintiffs' Claims for Punitive Damages ........... 15

    vi.   Individualized Damages Assessments Do Not Defeat Predominance ...................... 15

    vii.  The Classes Satisfy Rule 23(b)(3)'s Superiority Requirement. ............................. 16

  d.   The Classes are Certifiable Under Fed. R. Civ. P. 23(b)(2) ........................................ 17

    i.    Property Class Claims are Suitable for Rule 23(b)(2) Certification ........................ 17

    ii.   Medical Monitoring Class Claims are Suitable for Rule 23(b)(2) Certification. .......... 18

  e.   In the Alternative, Issues Classes are Certifiable Under Rule 23(c)(4) ....................... 19

III.  Conclusion ............................................................................................................................ 20

## TABLE OF AUTHORITIES

### Cases

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC*,
  712 F. Supp. 2d 885 (D. Minn. 2010)......................................................................... 12
*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 5
*Andrews v. Plains All Am. Pipeline, L.P.*,
  2018 WL 2717833 (C.D. Cal. Apr. 17, 2018)............................................................ 12
*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
  747 F.3d 489 (7th Cir. 2014)......................................................................................... 6
*Bell v. PNC Bank, Nat. Ass'n*,
  800 F.3d 360 (7th Cir. 2015).......................................................................................... 5
*Bennett v. Dart*,
  53 F.4th 419 (7th Cir. 2022) ........................................................................................ 20
*Bogenberger v. Pi Kappa Alpha Corp., Inc.*,
  104 N.E.3d 1110 (Ill. 2018) ........................................................................................ 11
*Boggs v. Divested Atomic Corp.*,
  141 F.R.D. 58 (S.D. Ohio 1991) ............................................................................ 10, 19
*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013)................................................................................... 15, 20
*Cook v. Rockwell Int'l Corp.*,
  181 F.R.D. 473 (D. Colo. 1998) .................................................................................. 10
*Day v. NLO, Inc.*,
  144 F.R.D. 330 (S.D. Ohio 1992) ................................................................................ 19
*Dial v. City of O'Fallon*,
  411 N.E.2d 217 (Ill. 1980) ........................................................................................... 13
*Duffin v. Exelon Corp.*, No. CIV A 06 C,
  2007 WL 845336 (N.D. Ill. Mar. 19, 2007)................................................................. 8
*Dvorak v. St. Clair Cnty., Illinois*,
  2018 WL 514326 (S.D. Ill. Jan. 23, 2018) ................................................................. 12
*Elliott v. Chicago Hous. Auth.*,
  2000 WL 263730 (N.D. Ill. Feb. 28, 2000) ................................................................ 19
*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...................................................................................................... 11
*Hartle v. FirstEnergy Generation Corp.*,
  7 F. Supp. 3d 510 (W.D. Pa. 2014) ............................................................................. 13
*In re Chicago Flood Litig.*,
  176 Ill. 2d 179, 680 N.E.2d 265 (1997)...................................................................... 14
*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014)................................................................................... 11, 15
*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  241 F.R.D. 435 (S.D.N.Y. 2007).................................................................................. 15
*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
  314 F.R.D. 580 (N.D. Ill. 2016).................................................................................... 19

*Int'l Union of Operating Engineers, Loc. 150 v. Lowe Excavating Co.*,
    870 N.E.2d 303 (Ill. 2006) ........................................................................ 15
*Iseberg v. Gross*,
    879 N.E.2d 278 (Ill. 2007) ........................................................................ 11
*Kartman v. State Farm Mut. Auto. Ins. Co.*,
    634 F.3d 883 (7th Cir. 2011) ..................................................................... 17
*Krywin v. Chicago Transit Auth.*,
    938 N.E.2d 440 (Ill. 2010) ........................................................................ 11
*Lacy v. Cook Cnty., Illinois*,
    897 F.3d 847 (7th Cir. 2018) ....................................................................... 8
*LeClercq v. Lockformer Co.*, No. 00 C,
    2001 WL 199840 (N.D. Ill. Feb. 28, 2001) .............................................. 5, 8
*Ludwig v. Pilkington N. Am., Inc.*, No.,
    2003 WL 22478842 (N.D. Ill. Nov. 4, 2003) ...................................... 5, 8, 10
*Marcial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989) ....................................................................... 6
*Mejdrech v. Met-Coil Sys. Corp.*,
    319 F.3d 910 (7th Cir. 2003) ....................................................................... 7
*Mejdreck v. Lockformer Co.*,
    2002 WL 1838141 (N.D. Ill. Aug. 12, 2002) ................................. 7, 8, 10, 11
*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ..................................................................... 10
*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .............................................................. 5, 6, 12
*Mulvania v. Sheriff of Rock Island Cnty.*,
    850 F.3d 849 (7th Cir. 2017) ..................................................................... 12
*Muniz v. Rexnord Corp.*,
    2005 WL 1243428 (N.D. Ill. Feb. 10, 2005) ..................................... 6, 8, 10
*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ..................................................................... 20
*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .................................................................................. 17
*Phillips v. Waukegan Hous. Auth.*,
    331 F.R.D. 341 (N.D. Ill. 2019) .................................................................. 6
*Powell v. Tosh*,
    942 F. Supp. 2d 678 (W.D. Ky. 2013) ....................................................... 13
*Pruitt v. City of Chicago, Illinois*,
    472 F.3d 925 (7th Cir. 2006) ....................................................................... 6
*Red Barn Motors, Inc. v. NextGear Cap., Inc.*,
    915 F.3d 1098 (7th Cir. 2019) ..................................................................... 7
*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) .......................................................................... 9
*Slocum v. Int'l Paper Co.*,
    2020 WL 1157863 (E.D. La. Mar. 10, 2020) ............................................ 13
*Slovinski v. Elliot*,
    927 N.E.2d 1221 (Ill. 2010) ...................................................................... 15

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011)...................................................................................... 8
*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988)............................................................................... 10, 11
*Stoll v. Kraft Foods Glob., Inc.*,
  2010 WL 3613828 (S.D. Ind. Sept. 6, 2010) ................................................... 5, 8, 10
*Suchanek v. Sturm Foods, Inc.*,
  311 F.R.D. 239 (S.D. Ill. 2015)................................................................................. 9
*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014).................................................................................... 16
*United States v. Aceto Agr. Chemicals Corp.*,
  872 F.2d 1373 (8th Cir. 1989).................................................................................. 14
*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*,
  274 F.R.D. 229 (S.D. Ill. 2011)................................................................................. 8
*Von Duprin LLC v. Major Holdings, LLC*,
  12 F.4th 751 (7th Cir. 2021) .................................................................................... 14
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................................. 6
*Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*,
  2012 WL 1551709 (D.N.J. Apr. 30, 2012) .............................................................. 12
*Wehner v. Syntex Corp.*,
  117 F.R.D. 641 (N.D. Cal. 1987).............................................................................. 12
*Yslava v. Hughes Aircraft Co.*,
  845 F. Supp. 705 (D. Ariz. 1993)............................................................................. 10

**Statutes**

42 U.S.C. § 9601................................................................................................................ 14
42 U.S.C. § 9607(b)........................................................................................................... 14

**Rules**

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 8
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 9
Fed. R. Civ. P. 23 ............................................................................................................... 5
Fed. R. Civ. P. 23(a) ..................................................................................................... 5, 20
Fed. R. Civ. P. 23(a)(2) .................................................................................................... 10
Fed. R. Civ. P. 23(b) ............................................................................................... 5, 10, 20
Fed. R. Civ. P. 23(b)(2) ............................................................................................... 17, 20
Fed. R. Civ. P. 23(b)(3) ............................................................................................... 17, 20

## Regulations

40 C.F.R. Part 300 .......................................................................................................... 14
40 CFR 190 .................................................................................................................... 3

## Other Authorities

2 W. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. Supp. 2021) .................................. 17
Manual for Complex Litigation, Fourth ............................................................................ 20

## EXHIBIT LIST

| Exhibit Number | Description |
| --- | --- |
| 1 | Class Area Map |
| 2 | Trial Plan |
| 3 | Enercon 2017 Environmental Report |
| 4 | Kaltofen Report |
| 5 | Auberle Report |
| 6 | Plato Report |
| 7 | Glass Report |
| 8 | Troast Report |
| 9 | Gundersen Report |
| 10 | Gundersen Declaration |
| 11 | Auberle Rebuttal |
| 12 | Kaltofen Rebuttal |
| 13 | Libicki Report |
| 14 | Werntz Report |
| 15 | Werntz Rebuttal |
| 16 | Troast Rebuttal |
| 17 | 1/24/20 Deposition of Darrel Lillie |
| 18 | 6/22/18 Sworn Statement of Darrel Lillie |
| 19 | 6/22/18 Sworn Statement of Jerel Childers |
| 20 | 6/22/18 Sworn Statement of Clay West |
| 21 | 6/22/18 Sworn Statement of Matt Carlsen |
| 22 | 8/16/23 Deposition of Matt Carlsen |
| 23 | 9/6/23 Deposition of Matt Kosminder |
| 24 | 9901280340 - License Amendment |
| 25 | HONSteward-0137020-FERMCO_UF4_and_UO3_Final_Contract |
| 26 | HONSteward-0132529- FERMCO_UF4_Shipment_Documentation |
| 27 | HONSteward-0113916 - FERMCO UF4 Documentation Package |
| 28 | HONSteward-0113981 - Timeline for Processing of FERMCO Green Salt |
| 29 | HONSteward-0114586 - Safety Evaluation Report - Amendment Application |

| 30 | HONSteward-0136550 - U3O8 from Holding Accounting Acceptable to AlliedSignal |
|----|------------------------------------------------------------------------------|
| 31 | HONSteward-0136551 - Status of FERMCO Oxide and Green Salt |
| 32 | HONSteward-0136552 - FERMCO March Shipment Expected Contents |
| 33 | HONSteward-0994702 - Memo on Active U Projects |
| 34 | HONSteward-0137181- MTW_analysis_of_FERMCO_cleanout_material_and_acceptance |
| 35 | HONSteward-0138175- Summary_of_Normal_Materials_in_the_Holding_Account |
| 36 | HONSteward-0136714-Conversion_of_Uranium_Metal_to_UF6 |
| 37 | HONSteward-0138012- Sales Contract FE-300_ Normal Uranium.pdf |
| 38 | Firm Resumes |

Plaintiffs and Putative Class Representatives move this Honorable Court to grant this motion to certify this matter as a Class Action, appoint Class Representatives and appoint James Clayborne, Jr., Katrina Carroll, Ron Austin, Paul Henry, Richard Kruger, Celeste Brustowicz, and Kevin Thompson as Class Counsel.  This motion is brought on behalf of a putative property damage class and a putative medical monitoring class of persons who have a possessory interest or who occupy real property in the Class Area described in the Class Map.[1] In addition to monetary and punitive damages, Plaintiffs seek injunctive relief to: 1) remediate their properties (2) implement medical monitoring, (3) independently monitor Honeywell's emissions, 4) reduce emissions and 5) make relocation available.  To illustrate the efficiencies gained from a single trial, Plaintiffs submit a proposed Trial Plan.[2] This motion for class certification is well-supported by evidence. Attached are reports of Plaintiffs' eight testifying experts which summarize extensive sampling, millions of documents, medical records and dozens of depositions as well as sampling of the evidence available for merits determination.

## I.      **Factual Background**

Since 1958, Defendant Honeywell International ("Honeywell") has operated its Uranium Hexafluoride Plant in Metropolis, Illinois, and since day one, has emitted into the Class Area radioactive dust that gives off alpha particles, which cause cancer. Particles settle on the ground and then are easily resuspended into the air, spreading them throughout the Class Area, into the homes and businesses owned by the Class Members.[3] This class action seeks to remedy this toxic, pervasive contamination.

---

[1] Ex 1.
[2] Ex 2
[3] Ex 4 at 65-67

Eight lines of evidence confirm that the Class Area is contaminated with Honeywell's radioactive dust: 1) Decades of Honeywell's required soil samples in the area prove that the plant's emissions caused a trend of increasing off-site uranium concentrations;[4] 2) Air modeling experts on both sides, using Honeywell's own emission estimates, agree that processed uranium particles would have been distributed throughout the Class Area;[5] 3) Plaintiffs' air models using Honeywell's actual air samples, not estimates, reveal much higher levels of radioactive contamination than do the Honeywell "estimates" given to the NRC;[6] 4) Ninety-five percent (95%) of samples that show contamination from the Plant fall within the Class Area;[7] 5) Evidence shows that Honeywell concentrates the more radioactive ultrafine daughter products of uranium – even when the plant is working as designed, the ultrafine particles of uranium and its daughters accumulate in dust collectors which then blow them through porous filter bags and into the Class Area;[8] 6) As per worker testimony, these porous filter bags often fail, resulting in large visible amounts of the ultrafine daughter products and processed uranium discharging into the Class Area;[9] 7) Radioactive dust was poorly controlled inside the plant and unfiltered radioactive dust blew into the Class Area out of fugitive emission points;[10] and 8) Testing reveals daughter products, fission products, and uranium throughout the Class Area.[11]

---

[4] Ex 3 at 39

[5] Ex 5, Ex 13 at 3

[6] Ex 11 at 5

[7] Ex 4 at 71

[8] Ex 17 at 53:21-56:13. Ex 18 at 6:19-7:22, 46:18-47:10, Ex 19 at 27:22-28:6, Ex 22 at 120:20-123:5, Ex 23 at 85:8-17, 109:23-110:22.

[9] Ex 17 at 111:25-112:11. Ex 18 at 8:12-8:21, 50:4-52:14, Ex 19 at 18:1-23, Ex 20 at 45:19-47:48:13_Ex 22 at 53:21-55:6, 73;24-74:11, 125:7-126:8, 131:2-20.

[10] Ex 9 at 26, Ex 10, Ex 17 at 74:24-77:11, 85:12-87:13, Ex 18 at 10:9-11:8, 42:10-43:18, 54:20, Ex 19 at 9:9-12:19, 33:23-35:20, Ex 20 at 31:8-33:8. Ex 21 at 35:16-39:14, Ex 22 at 35:7-38:10.

[11] Ex 4

The evidence shows that Honeywell breached the standard of care owed to the Class. EPA regulations limit emissions of radioactive contamination from a nuclear fuel cycle facility to no more than 25 millirems (mRem) annual to any target organ of any exposed person.[12] Plaintiffs' experts calculated doses exceeding the 25 mRem annual dose limit using both samples collected on property throughout the Class Area and Honeywell's own emission estimates. Doses to children ranged as high as 1,912 mRem per year, with approximately 50% of the soil and dust throughout Metropolis resulting a dose rate above the 25 mRem limit.[13]

Dose calculations are important for establishing the standard of care by which to measure emissions so that nuclear fuel cycle facilities can operate in a predictable regulatory environment. But these dose calculations have limited relevance in assessing general or specific cancer causation. According to an authoritative National Academy of Sciences study, there is no safe dose of radiation because cancer starts in one cell, not in an entire organ or a whole body.[14] Plaintiffs' experts conclude that 1) the Class Members face an unacceptable cancer risk,[15] 2) Honeywell's radioactive microparticles have substantially contributed to specific cancers in the area,[16] 3) children are the most at-risk population in Metropolis, [17] 4) medical monitoring is needed to protect the Class Members from cancer,[18] 5) property remediation and exposure reduction is needed to protect the Class and 6) an independent air sampling program throughout the Class Area must be established.[19]

---

[12] 40 CFR 190
[13] Ex 6 at 21 and Appendix D
[14] Ex 8 at 23, Ex 16 at 3.
[15] Ex 8 at 14-21, Ex 15 at 8-9, Ex 16 at 4.
[16] Ex 8 at 14-20, Ex 16 at 5.
[17] Ex 8 at 6.
[18] Ex 8 at 29, Ex 16 at 4-6
[19] Ex 5 at 11, Ex 9 at 37-38.

Defendant's experts take issue with the necessity of the Plaintiffs' demanded medical monitoring and environmental remediation because they say epidemiology has never proven that "natural uranium" processed by the plant can cause cancer. These experts are wrong because they ignore mounds of scientific evidence that uranium exposure can cause cancer, but more importantly, they grossly mischaracterize the radionuclides to which the Class was exposed.  The plant, as designed, concentrates and emits uranium's much more radioactive "daughter products."[20] Moreover, Honeywell, in violation of its license, processed at least 700,000 pounds of source materials from the weapons complex contaminated with plutonium and fission products.[21] The "natural uranium" Defendant's experts hang their hats on is a theoretical construct that does not exist anywhere on earth and ignores studies that have a mixed exposure parallel to Metropolis.[22]

Another Honeywell defense is that the radiation found in Metropolis comes from the Paducah Gaseous Diffusion Plant (PGDP) located several miles south of Metropolis on the other side of the Ohio River. But this is entirely refuted by U.S. Department of Energy environmental sampling for the area between the PGDP and Honeywell's uranium plant.  Honeywell's experts essentially argue that radioactive dust left the PGDP, leapfrogged over several miles of Kentucky and the Ohio River, only to fall on the Class Area.[23]

---

[20] Ex 12 at 8-10 and 16-19
[21] Ex 4 at 35-39. Ex 12 at 11-13, Ex 24, Ex 25, Ex 26, Ex 27, Ex 28, Ex 29, Ex 30, Ex 31, Ex 32, Ex 33, Ex 34, Ex 35, Ex 36, Ex 37
[22] Ex 15 at 1-4, 8-9
[23] Ex 12 at 2-6

## II.   <u>Argument</u>

### a.   **Legal Standard**

Class certification is proper if Plaintiffs satisfy the requirements of Rule 23(a) and at least

one of the prongs of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997).

Plaintiff bears the burden of demonstrating that certification is proper by a preponderance of the

evidence. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).To establish that a class

is ascertainable, a plaintiff must offer a class definition that is (1) precise, (2) defined by objective

criteria, and (3) not defined in terms of success on the merits. *Mullins v. Direct Digital, LLC*, 795

F.3d 654, 659–60 (7th Cir. 2015).  Plaintiffs propose ascertainable classes pursuant to Rule 23:

> *Property Damage Class*: All non-governmental legal persons who currently own real property within the boundaries of the Class Area depicted by the Class Area Line on **<u>Exhibit 1</u>** and who occupy or have a possessory interest in said property.  Plaintiffs Roger Steward, Clyde Schmidt, Joan Schmidt, Tim Beck, Charla Beck, Randy Langford, Brenda Langford, Todd Faulkner, and Kim Faulkner shall represent this class.

> *Medical Monitoring Class*: All real persons within the boundaries of the Class Area depicted by the Class Area Line on **<u>Exhibit 1</u>** who currently own and occupy real property or who provide proof they occupied property within said boundaries for more than one year since the Defendant began operations. Plaintiffs Roger Steward, Clyde Schmidt, Joan Schmidt, Tim Beck, Charla Beck, Randy Langford, Brenda Langford, Todd Faulkner, and Kim Faulkner shall represent this class.

Excluded from both classes are 1) Honeywell (including Honeywell's officers, directors,

agents, employees, and members of their immediate families), and any entity in which Honeywell

has a controlling interest, and legal representatives, heirs, and assigns of Honeywell; and 2) judicial

officers to whom this case is assigned, staff, and members of their immediate families.

In environmental cases, courts regularly certify classes using geographic areas when those

areas are described with precision.  *Stoll v. Kraft Foods Glob., Inc.*, No. 1:09-CV-0364-TWP-

DML, 2010 WL 3613828 (S.D. Ind. Sept. 6, 2010) (class depicted on a map); *LeClercq v.

Lockformer Co.*, No. 00 C 7164, 2001 WL 199840 (N.D. Ill. Feb. 28, 2001) (class described by

city streets); *Ludwig v. Pilkington N. Am., Inc.*, No. *Ludwig v. Pilkington N. Am., Inc.*, No. 03 C

1086, 2003 WL 22478842 (N.D. Ill. Nov. 4, 2003) (class defined by property ownership in village).

Here, the classes are geographically defined and precisely drawn to include the 3-mile boundary

based upon the experts' assessment of the impacted area and the Metropolis city limits.   These

classes are readily ascertainable. *Mullins*, 795 F.3d at 659–60.

### b.    Both Classes satisfy Rule 23(a)

#### i.    Numerosity

Under Rule 23(a)(1), Plaintiffs must establish that a sufficient number of Class Members

exist such that joinder would be impractical. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th

Cir. 1989) (citation omitted). "Although there is no 'bright line' ... a class of forty is generally

sufficient." *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 926 (7th Cir. 2006). *Arnold Chapman*

*& Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

Numerosity is easily met in environmental cases where toxic emissions invade populated areas.

*Muniz v. Rexnord Corp.*, No. 04 C 2405, 2005 WL 1243428 (N.D. Ill. Feb. 10, 2005); *Phillips v.*

*Waukegan Hous. Auth.*, 331 F.R.D. 341, 350 (N.D. Ill. 2019).   Here, Exhibit 1 demonstrates the

Class Area includes Metropolis, Illinois, a city of 6,000, as well as several square miles of

unincorporated Massac County.[24] Numerosity is satisfied.

#### ii.    Commonality

Rule 23(a)(2) requires questions of law or fact that are common to the class.   Commonality

exists when the claims "depend upon a common contention" that is "of such a nature that it is

capable of classwide resolution – which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke."   *Wal-Mart Stores,*

---

[24] Ex 1. Ex 4 at 46.

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In other words, commonality exists if "determination of the question will yield common answers that could resolve the litigation." *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019).

Commonality is established in environmental matters where a defendant engages in "standardized conduct toward the proposed class members."  *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *3 (N.D. Ill. Aug. 12, 2002).  The presence of common issues is virtually axiomatic in mass toxic tort cases because the very circumstances giving rise to liability, *i.e.*, the release of hazardous material, is one that by definition affects all class members in the same way.  Recognizing the implicit commonality of fact and law, the Seventh Circuit characterized the commonality analysis in toxic torts as "straightforward."  *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (affirming certification of class of property owners in TCE groundwater contamination case). In this case, every Class Member has been injured by radioactive microparticles released by Honeywell—over the same geographic area.  Honeywell's activities constitute a standardized course of conduct affecting all Class Members. Common questions of fact and law include, without limitation:

- Did Honeywell have a duty of care to residents of the Class Area?
- Did Honeywell allow radioactive contamination to cross its property line?
- Did Honeywell emit radiation in excess of federal law?
- Were Honeywell's excessive emissions the foreseeable result of its negligence in plant design and/or operations?
- Were Honeywell's excessive emissions the foreseeable result of its negligence in monitoring and controlling toxic material?
- Did Honeywell receive, process, or emit nuclear materials for which it did not have a license?
- Does the contamination in the Class Area originate from Honeywell?
- Did Honeywell expose class members to such an extent as to increase their risk of contracting serious latent disease?
- Did Honeywell release radioactive emissions into the Class Area to such an extent that independent environmental monitoring, site characterization remediation, and/or medical monitoring is necessary?

- Did Honeywell willfully conceal the dangerous nature of its plant from Plaintiffs and Class Members?

Not only are these questions common for both Classes, the answers all depend on common proof of Honeywell's course of conduct, not individual evidence for each Class Member. Plaintiffs have established commonality.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Plaintiffs must only show that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group."  *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *see also*, *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 866 (7th Cir. 2018); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011).

In environmental actions, typicality exists where class members are impacted by the same contamination.  *Muniz*, 2005 WL 1243428; *Ludwig*, 2003 WL 22478842, at *3; *Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *6 (N.D. Ill. Mar. 19, 2007); *Mejdreck*, 2002 WL 1838141; *Stoll*, 2010 WL 3613828; *LeClercq*, 2001 WL 199840.

Honeywell's actions harmed Class Representative and members in the same way: by releasing radionuclides onto their properties and by exposing Plaintiffs and Class Members to higher risks of cancer.  Accordingly, Plaintiffs and Class Members share claims based on the same legal theories that arise from Honeywell's common conduct.  Plaintiffs' interests are closely aligned with the Class Members and, by advancing individual interests, Plaintiffs will advance the common interests of the classes.  Plaintiffs' claims are typical.

     *iv.*      *Adequacy of Representation*

Adequacy of representation under Fed. R. Civ. P. 23(a)(4) has two components: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

*Class Counsel.* Plaintiffs hired qualified and competent counsel who are experienced in environmental litigation and class actions.[25] The record before this Court demonstrates that Plaintiffs' counsel have acted diligently in seeking relief for the proposed Classes and will continue to do so.

*Class Representatives.* An adequate plaintiff is a plaintiff that has "a sufficient interest in the outcome of the case to ensure vigorous advocacy and do[es] not have interests antagonistic to those of the class." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 256 (S.D. Ill. 2015).

Here, Plaintiffs have no interests that conflict with, or are antagonistic to, the interests of the Classes. All Plaintiffs and Class Members share the same interests and Plaintiffs have a strong incentive to vigorously prosecute their claims and those of the Classes. All have suffered the same type of injury—loss of value and enjoyment of their properties, loss of exclusive possession of their property, and/or overexposure to contamination—and bring common claims to recover for this harm. Plaintiffs and Class Members all seek the same forms of relief. Plaintiffs understand the issues in this litigation and have taken an active role by giving sworn statements, depositions, and actively participating in discovery. Plaintiffs satisfy all of the prerequisites of Fed. R. Civ.P. 23(a)(4).

---

[25] Ex 38

### c.    The Classes are Certifiable Under Fed. R. Civ. P. 23(b)(3)

#### i.    *Courts Considering Toxic Emissions Cases Find Predominance*

Fed. R. Civ. P. 23(b)(3) requires that: (1) common questions of law or fact predominate; and (2) proceeding as a class action is the superior form of adjudication. There is considerable overlap between commonality/typicality and the predominance requirements of Rule 23(b).   "A finding of commonality will likely satisfy a finding of predomination [*sic*]*,"* because "[l]ike the Rule 23(a)(2) standard, issues are considered to predominate when there is a common nucleus of operative fact among all the class members." *Mejdreck*, 2002 WL 1838141, at \*6 (citations omitted).  To satisfy Fed. R. Civ. P. 23(b)(3), "[i]ndividual questions need not be absent . . . . The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

Here, as in similar environmental cases within the Seventh Circuit—*Stoll, Mejdreck, LeClercq, Ludwig,* and *Muniz*—and in other circuits, *Bentley, Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988)*, Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D. Ohio 1991)*, Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993)*, and Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473 (D. Colo. 1998), Rule 23(b)(3) property damage classes are certifiable when the claims arise from a common history of contamination from a single source. "Common issues of liability, causation, and remedies not only predominate, but overwhelm individualized issues." *Boggs*, 141 F.R.D. at 67.

Honeywell's liability arises out of the same nucleus of operative facts for each Plaintiff and the relevant questions will not differ from Class Member to Class Member. Since the Property

Damage Class consists of owners situated over Honeywell's plume of contamination, the causation analysis will not require individualized inquiries.[26]

       *ii.*      *Common Questions Predominate for Plaintiffs' Negligence Claim*

The predominance inquiry analyzes the elements of the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Negligence elements are "existence of a duty of care owed by the defendants to the plaintiffs, a breach of that duty, and an injury proximately caused by that breach." *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). Common questions predominate on all of these elements.

*Duty of Care*. In Illinois, "a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 104 N.E.3d 1110, 1118 (Ill. 2018). Honeywell's duty presents *only* common questions susceptible to common evidence.

*Breach*. Common questions predominate here too, since breach can be proved via common evidence concerning facility operations and a "single course of conduct which is identical for each of the plaintiffs." *Sterling*, 855 F.2d 1188; *see also, In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014); *Mejdreck*, 2002 WL 1838141, at *6.

*Proximate Causation*. Proximate cause "contains two elements: cause in fact and legal cause." *Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446–47 (Ill. 2010). But for Honeywell's conduct in plant operations, there would be no contamination at all. Moreover, the radioactive contamination could *only* have come from Honeywell. Dr. Kaltofen ruled out coal-related electric

---

[26] Ex 1

power operations and the PGDP as alternative sources of radioactive contamination.[27] Because all of the contamination emanated from Honeywell and each property is contaminated, the precise location of any particular property is irrelevant. Honeywell's conduct is directly tied to each Class injury and whether Honeywell should be held responsible for these injuries is a single, common question.

*Injury.* Common questions exist about the *fact* of Class injuries and the *nature* of such injuries, and these common questions predominate over individualized issues of the amount of damages. Federal courts, including this Court, uniformly hold that as long as the fact of injury can be established through common proof, the need for individualized damage determinations does not defeat predominance. *Dvorak v. St. Clair Cnty., Illinois*, No. 14-CV-1119-SMY-RJD, 2018 WL 514326, at *8 (S.D. Ill. Jan. 23, 2018) ("the need for individualized damage determinations is not necessarily grounds to deny certification") (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015)); *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Reliable evidence of soil testing and soil and air modeling, establish the *fact* and the *nature* of Class's injuries.[28] Questions of the source, geographic scope, and extent of contamination are calculable facts that can be ascertained from reliable soil testing and soil and air modeling techniques.[29] Expert modeling can provide common evidence for proximate causation in contamination cases. *Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX, 2018 WL 2717833, at *9 (C.D. Cal. Apr. 17, 2018); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987). *Warner Chilcott Lab'ys Ireland Ltd. v. Impax Lab'ys, Inc.*, No. 2:08-CV-06304 WJM, 2012 WL 1551709, at *33 (D.N.J. Apr. 30, 2012); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*,

---

[27] Ex 4 at 17-18, Ex 12 at 2-6
[28] Ex 1. Ex 4 at 46. Ex 5 at 19,20. Ex 8 at 6.
[29] Ex 4 at 30.

712 F. Supp. 2d 885, 896–97 (D. Minn. 2010).  Plaintiffs also present air modeling data using AERMOD, the EPA's preferred air dispersion modeling, method recognized in these cases: *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2020 WL 1157863 (E.D. La. Mar. 10, 2020); *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 518 (W.D. Pa. 2014); *Powell v. Tosh*, 942 F. Supp. 2d 678, 718 (W.D. Ky. 2013).

As common evidence can establish the fact and nature of Class's injuries, and variability in the extent of injury and amount of damages does not preclude class certification, common questions predominate over individualized issues on the negligence claims.

### iii. Common Questions Predominate in Plaintiffs' Trespass and Nuisance Claims

The same is true for the trespass and nuisance claims. In Illinois, a defendant is liable for trespass, "irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (Ill. 1980). Honeywell's liability for trespass, therefore, rests on two questions. First, did Honeywell cause its emissions to enter Plaintiffs and class members properties?  Second, did Honeywell know that the entry of its emissions on Class's real property was "certain, or substantially certain, to result" from its conduct?

Both questions will be answered with common evidence from Plaintiffs' experts showing Honeywell's radioactive emissions are found in the Class Area.    The only individualized issue presented in a trespass claim is monetary damages, which does not defeat predominance.

The same goes for nuisance.  In Illinois, a private nuisance is an invasion of "another's interest in the use and enjoyment of his or her land [that is] substantial, either intentional or

negligent, and unreasonable. The standard for determining if particular conduct constitutes a nuisance is the conduct's effect on a reasonable person." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 680 N.E.2d 265, 277 (1997). Honeywell's liability is based on common evidence that its emissions invaded the use and enjoyment of the Class's property. Whether Honeywell acted intentionally or negligently in its invasion will also be answered with common proof. The objective "reasonable person" standard applies uniformly across the Class and Honeywell's state of mind will be determined from common evidence. Like trespass, the only individualized issues are the amount of monetary damages. Common questions predominate in the nuisance claim.

  *iv.*  *Common Questions Predominate in Plaintiffs' CERCLA Claims*

  Claims for cleanup costs under CERCLA, 42 U.S.C. § 9601 *et seq.*, require plaintiffs to prove: "(1) the site in question is a 'facility'; (2) the defendant qualifies as a [potentially responsible party]; (3) the facility experienced a release or threatened release of hazardous substances; and (4) the plaintiff incurred costs consistent with the National Contingency Plan [40 C.F.R. Part 300] in responding to the release." *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 758 (7th Cir. 2021). The first three elements axiomatically raise *only* common questions. The fourth element, incurring costs consistent with the National Contingency Plan, is likewise common. Plaintiffs' incurred expenses to investigate the scale and scope of Honeywell's contamination on behalf of the putative Classes, Complaint at ¶ 391, are common to the Class.

  There are three affirmative defenses specified in CERCLA: that the release was caused by an act of God, by an act of war, or by an act or omission of a third party. 42 U.S.C. § 9607(b). *United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1378 (8th Cir. 1989). In other words, each and every affirmative defense to CERCLA liability revolves solely around the circumstances of the release, another common question that is the same for all Class Members.

*v.*     *Common Questions Predominate in Plaintiffs' Claims for Punitive Damages*

Punitive damages are available in an Illinois tort action "when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Slovinski v. Elliot*, 927 N.E.2d 1221, 1224 (Ill. 2010).   Factfinders may consider "the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." *Id.*

Here, the character of Honeywell's actions, the nature of the harm, and the wealth of Honeywell are factors indisputably common to all Class members.  The only remaining factor— the extent of harm—presents individualized issues only as far as the calculation of monetary damages which may vary among Class members.  Even this factor presents a common question as courts awarding punitive damages "must consider the ratio between the actual harm suffered by [a plaintiff] and the punitive damages awarded."  *Int'l Union of Operating Engineers, Loc. 150 v. Lowe Excavating Co.*, 870 N.E.2d 303, 320 (Ill. 2006). Accordingly, determining the *ratio* of punitive to actual damages is the thorniest question confronting the trier of fact in this case, and it is a question common to all Class members.  Having determined at trial whether Honeywell's conduct merits punitive damages and, if so, in what ratio, the precise dollar amount awarded to each Class member will be simple arithmetic in follow-on proceedings.

*vi.*     *Individualized Damages Assessments Do Not Defeat Predominance*

The only element of Plaintiffs' claims that presents individualized issues is the amount of monetary damages. This does not prevent a finding of predominance. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). In fact, Rule 23(b)(3)'s predominance requirement is frequently satisfied in cases premised on land contamination despite the need for individualized

15

damages calculations.  *In re Deepwater Horizon*, 739 F.3d at 815– 16;  *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435 (S.D.N.Y. 2007).

Plaintiffs intend to present in Phase 2 the following Class Damages: CERCLA Response Costs for the Class, CERCLA Attorney Fees & Cost, and Punitive Multipliers. Plaintiffs intend to present in Phase 2 the Class Representatives individual damages as bellwether damages that will include individual CERCLA damages, annoyance & inconvenience, loss of use, nominal trespass damages and diminution of property value.[30]

> vii.      The Classes Satisfy Rule 23(b)(3)'s Superiority Requirement.

Four factors, addressed as follows, determine superiority:

*1.      Class Members' Interest in Individual Litigation.*  "The court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014).  Where common proof of liability "require[s] technical expertise and considerable expert testimony, as well as extensive discovery into the defendant's manufacturing processes," but where individual issues can be "readily determined in individualized follow-on proceedings," courts may reasonably conclude that a class action is superior. *Id.* Where "resolution of the merits may require costly survey evidence and expert testimony, along the lines plaintiffs have proffered for certification purposes, . . . no rational individual plaintiff would be willing to bear the costs of this lawsuit." *Suchanek*, 764 F.3d 750*.*

Plaintiffs' common evidence is the result of significant technical expertise, considerable expert testimony, and extensive discovery into Honeywell's operations—a costly and time-consuming venture that no rational individual plaintiff would be willing to bear alone.  In contrast,

---

[30] Ex 2

calculation of individual damages awards can be readily determined in follow-on proceedings, if necessary, as outlined in Plaintiffs' trial plan, **Exhibit 2**.

*2.     Other Pending Litigation.* None.

*3.     Desirability of Concentrating Litigation in this Forum.* Aggregation of class members' claims in this forum is desirable.

*4.     Manageability.* Whether a class action will be manageable "is, by … far, the most critical concern in determining whether a class action is a superior means of adjudication." 2 W. Rubenstein, Newberg on Class Actions § 4.72 ⁽5th ed. Supp. 2021). This class action is the only option for Plaintiffs to ever advance their claims. The complexity of this case, coupled with its attendant costs would render individual claims economically infeasible. "Most of the Plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809(1985).

### d.     The Classes are Certifiable Under Fed. R. Civ. P. 23(b)(2)

Certification of the Classes under Rule 23(b)(2) is also appropriate because the injunction and related mitigation measures will provide relief to all Class members. [31]

The Seventh Circuit endorses certification of both Rule 23(b)(2) and Rule 23(b)(3) classes in the same litigation where the class seeks dual aims in obtaining compensation for past injury and preventing future injury. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 894 (7th Cir. 2011).

#### i.     *Property Class Claims are Suitable for Rule 23(b)(2) Certification.*

The claims presented are premised on Honeywell's uniform course of conduct.  Plaintiffs demand two forms of final injunctive relief: an order implementing remediation of the Class

---

[31] Ex 2- Trial Plan- Sets forth such injunctive relief shall be determined by the Court in Trial Phase 3.

Properties, including full site characterization and cleanup; and an order requiring Honeywell to reduce exposure to the Class.

An injunction mandating the remediation of properties within the Class Area is appropriate for the Property Damage Class as a whole because it would require Honeywell both to remediate class properties and prevent the future migration of their contaminants onto Plaintiffs' properties.

Even if an *individual* property is remediated through soil removal and interior dust cleanup, this relief would be futile under real-world conditions where radioactive soils and dusts are constantly shifting due to natural factors.[32]  Therefore, the basis of any site remediation program must apply *throughout* the Class Area, as Dr. Glass noted:

> "I provide these opinions under the assumption that these methods would be applied commonly to the Class Area where the objective is to reduce risk from exposure to the Honeywell MTW COCs that were deposited by the common mechanism of airborne transport and deposition."[33]

Likewise, an injunction mandating the reduction of the Class's exposure to Honeywell's contamination is appropriate. Honeywell continues to release on a regular basis and unless the recurrence of uncontrolled emissions is stopped or contained, the need for future remediation remains.  Plant redesign will prevent future uncontrolled emissions of radioactive contaminants providing identical benefits to all Class Members. [34] This is appropriate injunctive relief under Rule 23(b)(2).

  *ii.*  *Medical Monitoring Class Claims are Suitable for Rule 23(b)(2) Certification.*

The Medical Monitoring Class claims are premised on Honeywell's uniform course of conduct which contaminated the Class Area and increased cancer risks.[35]

---

[32] Ex 4 at 66-67.
[33] Ex 7 at 22.
[34] Ex 7 at 22.
[35] Ex 8.

Similarly, the Medical Monitoring Class consists of persons who currently own or lease real property in the Class Area, or people who can provide proof they lived in the Class Area for more than one year since operations began.  The *Boggs* court, confronted with a similar case, concluded that:

> To the extent that each claim of each plaintiff depends upon proof concerning the history of operations at the plant, the nature, timing, extent and cause of emissions, the kinds of remedies, if any, appropriate to address potential future emissions, the need for medical monitoring, are the generalized impact of the plant's operations on real property values, that proof would be virtually identical in each case.  It would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence and decide the same issues.  Clearly, a Rule 23(b)(3) class could properly be certified under these circumstances.

*Boggs*, 141 F.R.D. at 67.  Rule 23(b)(2) class certification of medical monitoring is warranted.

Courts within the Seventh Circuit have focused on the contours of a proposed medical monitoring program to determine whether it is injunctive relief.  *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 601–02 (N.D. Ill. 2016) (certifying 23(b)(2) settlement class of with 50-year medical monitoring program); *Elliott v. Chicago Hous. Auth.*, No. 98 C 6307, 2000 WL 263730, at *14–15 (N.D. Ill. Feb. 28, 2000) (court-supervised medical monitoring program is properly characterized injunctive relief under Rule 23(b)(2)").

The Medical Monitoring program proposed by Plaintiffs seeks non-monetary relief, is equitable and injunctive in nature.  *Day v. NLO, Inc.*, 144 F.R.D. 330, 335–36 (S.D. Ohio 1992).  The medical monitoring program is designed "to look for latent diseases before symptoms develop, so that earlier medical evaluation can be done, and treatment initiated earlier."[36]  It is aimed specifically at identifying cancers with "significant latency periods, where early detection can result in a cure, and where there is a reasonably effective accessible screening test

---

[36] Ex 14 at 6.

available."[37] It is a program laser-focused on prevention screening of cancers. Certification under Rule 23(b)(2) is warranted.

### e.   In the Alternative, Issues Classes are Certifiable Under Rule 23(c)(4)

Should this Court find the Classes do not meet Rule 23(b), it can and should certify issues classes under Rule 23(c)(4) which are appropriate which "may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action." Manual for Complex Litigation, Fourth, at § 21.24. The Seventh Circuit has affirmed the use of issues classes to bifurcate proceedings on questions such as individualized damages and proximate causation. *Butler*, 727 F.3d at 800.; *Pella Corp.*, 606 F.3d at 394.

There are numerous questions of law and fact common to the Classes that should be resolved on a class wide basis focusing solely on Honeywell's conduct and the resulting consequences. Whether a defendant's common course of conduct complied with statutory and regulatory standards are particularly appropriate for Rule 23(c)(4) class treatment; *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) ("We do not see . . . why application of the [regulatory] Standards cannot be determined class-wide . . .").

### III.   <u>Conclusion</u>

Plaintiffs have satisfied all four prerequisites of Rule 23(a) and two of the elements of 23(b). Plaintiffs respectfully request that this case be certified as a class action under Rules 23(b)(2) and 23(b)(3). Alternatively, that the Court certify the issues described above pursuant to Rule 23(c)(4).

---

[37] Ex 14 at 8

Respectfully Submitted,

*/s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Tel. (312) 750-1265
Fax: (312) 212-5919
Email: katrina@lcllp.com
         kyle@lcllp.com

James F. Clayborne, Jr.
**CLAYBORNE, SABO AND WAGNER LLP**
525 W. Main Street, Suite 105
Belleville, Illinois 62220
Tel. (618) 239-0187
Fax (618) 416-7556
Email: jclayborne@cswlawllp.com

Richard Kruger
Paul Henry
**KRUGER, HENRY AND HUNTER, LLC**
110 W. Fifth Street
Metropolis, Illinois 62960
Tel. (618) 524-9302
Fax (618) 524-9305
Email: khh@khhlaw.com
         phenry@khhlaw.com

Celeste Brustowicz (*Admitted pro hac vice*)
Victor Cobb (*Admitted pro hac vice* )
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, LA 70130
Tel. 504-399-0009
Email: cbrustowicz@clfnola.com
         vcobb@clfnola.com

Kevin W. Thompson (*Admitted pro hac vice*)
David R. Barney, Jr. (*Admitted pro hac vice*)
Stephen H. Wussow (*Admitted pro hac vice*)
**THOMPSON BARNEY**
2030 Kanawha Boulevard, East
Charleston, West Virginia 25311

21

Tel. (304) 343-4401
Fax (304) 343-4405
Email: kwthompsonwv@thompsonbarneylaw.com
      drbarneywv@gmail.com
      swussow@thompsonbarneylaw.com

Ron A. Austin (*Admitted pro hac vice*)
Catherine Hilton (*Admitted pro hac vice*)
**RON AUSTIN & ASSOCIATES, LLC**
920 Fourth Street
Gretna, LA 70053
Tel. (504) 227-8100
Fax (504) 227-8122
Email: raustin@ronaustinlaw.com
      chilton@ronaustinlaw.com

***ATTORNEYS FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I hereby certify that on _____, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served on all parties.

*/s/ Katrina Carroll*
Katrina Carroll

23